UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINE DIFRANCO,

    Plaintiff,

v.                              Case No.:  8:20-cv-2334-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Christine DiFranco seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA"), finding she was no longer disabled since March 10, 2016. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.**    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

Generally, an ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. Yet when the issue is cessation of disability benefits, then the ALJ must follow an eight-step evaluation for a Title II claim and a seven-step process for a Title XVI claim to determine whether a plaintiff's disability benefits should continue. *See* 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(f), 416.994(b). Here, the ALJ followed an eight-step evaluation and the Court adopts the explanation of each step as set forth in the decision. (Tr. 23).

C.   **Procedural History**

On October 16, 2012, Plaintiff was found disabled beginning on January 11, 2012. (Tr. 22, 272). On March 10, 2016, it was determined that Plaintiff was no longer disabled since that date. (Tr. 22, 100-110). After a disability hearing by a State agency Disability Hearing Officer, the determination was upheld upon reconsideration. (Tr. 22, 125-31, 138). Plaintiff requested a hearing, and on October 10, 2018 and August 7, 2019, hearings were held before Administrative Law Judge

("ALJ") Margaret Craig. (Tr. 46-93). On September 17, 2019, the ALJ entered a decision finding Plaintiff's disability ended on March 10, 2016, and she had not become disabled again since that date. (Tr. 22-36).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on August 25, 2020. (Tr. 1-8). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on October 5, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 21).

### D. Summary of ALJ's Decision

In this case, the ALJ found the most recent favorable medical decision finding Plaintiff was disabled was the decision dated October 16, 2012. (Tr. 24). The ALJ determined that this decision is known as the "'comparison point decision' or CPD." (Tr. 24). At the time of the CPD, the ALJ found Plaintiff to have the following medically determinable impairment: ovarian cancer, and that this impairment met listing 13.23E of 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. § 404.1520(d)). (Tr. 24.).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity through the date of the decision. (Tr. 24). At step two, the ALJ found that since March 10, 2016, Plaintiff has had the following medically determinable impairments: "history of ovarian cancer status post-surgery and chemotherapy;

dyshidrotic eczema; actinic keratosis; allergic dermatitis; right knee derangement; depressive disorder and anxiety disorder." (Tr. 24). The ALJ further found these were the Plaintiff's impairments as of the date of the decision. (Tr. 24). Since March 10, 2016, the ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1525, 404.1526). (Tr. 24).

At step four, the ALJ determined that medical improvement occurred as of March 10, 2016. (Tr. 26). The ALJ found that the medical improvement was related to the ability to work because by March 10, 2016, Plaintiff's CPD impairments no longer met or medically equaled the same listing that was met at the time of the CPD (20 C.F.R. § 404.1594(c)(3)(i)). (Tr. 26). At step six, the ALJ determined that since March 10, 2016, Plaintiff continued to have a severe impairment or combination of severe impairments. (Tr. 26).

At step seven, the ALJ found that since March 10, 2016, Plaintiff has had the residual functional capacity ("RFC") to perform work as follows:

> Based on the impairments present since March 10, 2016, the claimant has had the residual functional capacity to perform a limited range of light work as defined in 20 [C.F.R. §] 404.1567(b); specifically, she can lift and carry 20 pounds occasionally; lift and carry 10 pounds frequently; sit for 6 hours out of an 8-hour workday; stand for 3 hours out of an 8-hour workday up to 1 hour at a time; walk for 2 hours out of an 8-hour workday up to 1 hour at a time; only occasionally push

>or pull; only frequently reach overhead with the bilateral upper extremities; frequently operate foot controls with the right lower extremity; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; never crawl; occasionally balance; frequently stoop, kneel and crouch; must avoid all exposure to unprotected heights; occasionally operate a motor vehicle; avoid even moderate exposure to humidity, wetness, pulmonary irritants, skin irritants, temperature extremes, vibration and other hazards; and is limited to simple routine tasks involving only occasional contact with co-workers, supervisors and the general public.

(Tr. 27).

At step eight, the ALJ determined that since March 10, 2016, Plaintiff has been unable to perform her past relevant work as a case worker, counselor, and administrative clerk. (Tr. 34). The ALJ found that on March 10, 2016, Plaintiff was an individual closely approaching advanced age. (Tr. 34). Relying on the testimony of two vocational experts, the ALJ found that after considering Plaintiff's age (51 on March 10, 2016), education (at least high school with a master's degree in criminal justice), work experience, and RFC, and based on the impairments present since March 10, 2016, Plaintiff had been able to perform a significant number of jobs in the national economy. (Tr. 34, 73). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1) marker, DOT 209.587-034,[1] light, SVP 2

(2) photo-machine copy machine operator, DOT 207.685-014, light SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

      (3)   router, DOT 222.587-038, light, SVP 2

(Tr. 35). The ALJ concluded that Plaintiff's disability ended on March 10, 2016, and she had not become disabled again since that date. (Tr. 35).

## II. Analysis

On appeal, Plaintiff raises two issues: (1) whether the ALJ's decision was in error in relying on a response from the vocational expert to a vague or incomplete hypothetical; and (2) whether the ALJ's decision was in error in not explaining in the written decision whether she considered the borderline age issue. (Doc. 23, p. 5, 9).

### A. Hypothetical to Vocational Expert

Plaintiff argues that the hypothetical posed to the vocational expert does not clarify the amount of time Plaintiff could be on her feet in an 8-hour workday. (Doc. 23, p. 23). At step eight of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). To make this determination, an ALJ may obtain the testimony of a vocational expert. *Id*. For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions,

the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

The ALJ posed several hypotheticals to the vocational experts. (Tr. 54-57, 89-92). Focusing specifically on the sitting, standing, and walking limitations, the ALJ posed limitations of:

- sitting 6 hours in an 8-hour day
- standing 3 hours in an 8-hour day, up to 1 hour at a time
- walking 2 hours in an 8-hour day, up to 1 hour at a time

(Tr. 54). For the standing and walking limitations, the ALJ adopted consultative examiner Eniola Owi, M.D.'s findings from her Medical Source Statement (Tr. 647-52). Plaintiff claims that the problem with these limitations is that it is not clear whether Plaintiff "could be on her feet for five hours per day or only three hours per day." (Doc. 23, p. 7). Plaintiff also claims that a reasonable reading of the evaluation is that Plaintiff could be on her feet for 3 hours in an 8-hour workday, but only walk up to 2 of those 3 hours. (Doc. 23, p. 7). Plaintiff then claims that the vocational expert may have interpreted these limitations to mean Plaintiff could be on her feet for 5 hours in an 8-hour workday, by standing 3 hours and walking 2 hours. (Doc.

23, p. 7-8). Lastly, Plaintiff argues that because Dr. Owi found Plaintiff could lift 20 pounds frequently, but only carry 20 pounds occasionally, "[t]his suggests that the consultative examiner felt that the claimant would have more difficulty with walking than standing." (Doc. 23, p. 7).

The Court agrees with the Commissioner that "Plaintiff's argument injects conflict where there is none." (Doc. 24, p. 9). At the second hearing, the vocational expert did not indicate any confusion by the limitations posed by the ALJ nor did she seek clarification. (Tr. 54-57). The limitations as to standing and walking were clear. Further, while Plaintiff contends the limitations to lifting and carrying somehow correlate to standing and walking, Dr. Owi did not make such a correlation in her Medical Source Statement. The hypothetical posed to the vocational expert contained all of Plaintiff's limitations supported by the record, including the walking and standing limitations found in Dr. Owi's Medical Source Statement. The RFC and the hypothetical are clear as to the limitations for standing and walking. Substantial evidence supports the RFC assessment. And by including all of Plaintiff's limitations supported by the record in the hypotheticals, substantial evidence supports the ALJ's reliance on the vocational expert's testimony concerning representative jobs in the national economy that Plaintiff can perform.

### B.     Borderline Age

Plaintiff argues that the ALJ erred in only addressing Plaintiff's age as of March 10, 2016, (the date Plaintiff was no longer considered disabled). He claims the ALJ overlooked the fact that the decision was made on September 17, 2019, and Plaintiff would have turned 55 years old less than three months after the date of the decision. (Doc. 23, p. 9). Plaintiff's argument is misguided.

To determine disability, the Social Security Administration ("SSA") must use the age category applicable to a claimant. HALLEX I-2-2-42, 2016 WL 1167001, at *1. SSA does not apply the age categories mechanically in borderline cases. *Id.* "If a claimant is within a few days to a few months of reaching an older age category (hereinafter 'higher age category'), and using the higher age category would result in a determination of decision that the claimant is disabled, SSA will consider whether to use the higher age category after evaluating the overall impact of all the factors of the case." *Id.*

Importantly, the ALJ will assess whether a plaintiff reaches or will reach the next higher age category within a few days to a few months after the:

- Date of adjudication;

- End of disabled widow(er)'s benefits prescribed period;

- End of child disability re-entitlement period; or

- *Date of cessation of disability*.

*Id.*, at *1; *see also Banks v. Comm'r of Soc. Sec.*, No. 5:15-CV-459-OC-18PRL, 2017 WL 455943, at *4 (M.D. Fla. Jan. 13, 2017), *report and recommendation adopted sub nom. Cynthia Lynn Banks v. Comm'r of Soc. Sec.*, No. 5:15-CV-459-OC-18PRL, 2017 WL 457188 (M.D. Fla. Feb. 2, 2017). Thus, the March 10, 2016 date is the correct date to determine whether Plaintiff is in a borderline age situation.

Here, the ALJ noted that as of March 10, 2016, Plaintiff was an individual closely approaching advanced age, being 51 years old at the time. (Tr. 34). The ALJ properly considered Plaintiff's age as of the date of cessation of disability and not, as Plaintiff argues, the date of the decision. Individuals aged 50-54 are considered persons closely approaching advanced age. 20 C.F.R. 404.1563(d). Thus, at 51 Plaintiff fell within this category and was not on the borderline for the next age category. Substantial evidence supports the ALJ's findings as to Plaintiff's age category.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on May 4, 2022.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties